**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stanley Dyck, | No. CV-13-02461-PHX-DGC |
| Plaintiff, | **AMENDED ORDER** |
| v. | |
| Michael J. Blake, et al., | |
| Defendants. | |

Defendant Ameritas Investment Corp. has filed a motion to dismiss under Rule 12(b)(6). Doc. 24. The motion has been fully briefed. For the reasons set forth below, the motion will be denied.[1]

**I.    Background.**

Plaintiff, who resides in New Mexico, alleges that he opened a personal retirement account and retirement accounts for his employees with Defendant Michael Blake, a securities representative and alleged agent of Defendant Ameritas Investment Corp. ("Ameritas"). Doc. 1. Plaintiff executed a written statement that he was a conservative investor, with minimal tolerance for risk. *Id.*, ¶¶ 21-22. Plaintiff gave Blake discretion over the Ameritas accounts, allowing him to buy and sell without Plaintiff's prior approval, which Blake did. Ameritas sent annual summaries of the account activities to

---

[1] Defendant's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    Plaintiff.  *Id*., ¶¶ 20, 23-24.  Blake allegedly represented to Plaintiff in writing that all

2    investment advice rendered by Blake was through Defendant.  ¶ 26.

3           Blake eventually moved to Arizona, at which time he informed Plaintiff that he

4    was doing business as "Olympus Financial Advisors, LLC" and "Olympus Financial

5    Advisors Peak," and began using the email address mblake@ofapeak.us for

6    communications with Plaintiff.  *Id*. ¶¶ 27-30.  Plaintiff alleges that these emails contained

7    a statement that securities were being offered solely through Ameritas.  *Id.* ¶ 32.

8           In July 2008, Blake contacted Plaintiff by telephone and convinced him to invest

9    $100,000 in a bridge loan for an office building in the Chicago area, advising Plaintiff

10   that the developers were successful and profitable, the investment was safe, and the loan

11   would generate a 25% annual return.  *Id*. ¶¶ 39-44.  Blake instructed Plaintiff to make his

12   $100,000 check payable to "Longest Drive LLC," which Plaintiff alleges was wholly

13   owned by Blake and his wife.  *Id*., ¶¶ 34, 44.  Plaintiff does not allege that Ameritas was

14   involved in the bridge loan or knew Blake was offering it to Plaintiff, but that "based on

15   the broker-dealer relationship with Ameritas, [Blake] ostensibly represented that this was

16   investment advice being provided by Ameritas and thus this was an Ameritas investment

17   transactions, [sic] the same as plaintiff's other Ameritas investments."  *Id*., ¶ 48.

18          Plaintiff claims that he was defrauded in connection with the $100,000 investment.

19   *Id*., ¶¶ 50-63.  Plaintiff asserts that Blake concealed key facts about the transaction,

20   including the property address, that there was no collateral, and that the project was in

21   financial trouble.  *Id*. at 64.  Plaintiff has sued Blake for fiduciary misconduct and fraud,

22   and Ameritas for breach of fiduciary duty.  *Id*.

23   **II.     Legal Standard.**

24          When analyzing a complaint for failure to state a claim to relief under Rule

25   12(b)(6), the well-pled factual allegations are taken as true and construed in the light

26   most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th

27   Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the

28   assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are

1  insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.*

2  *Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid a Rule 12(b)(6) dismissal, the

3  complaint must plead enough facts to state a claim to relief that is plausible on its face.

4  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not

5  akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

6  defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

7  556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

8  possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the

9  pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

10  **III.    Analysis.**

11        Ameritas argues that Plaintiff has failed to support his allegation that Ameritas had

12  a fiduciary duty to Plaintiff, and, even if such a duty existed, that Ameritas breached the

13  duty.  *Id*. at 9-12.

14        **A.    Duty.**

15        Plaintiff asserts that Ameritas had a fiduciary relationship with Plaintiff because

16  the company held $700,000 of his investment funds.  *Id*., ¶ 67.  Plaintiff argues that

17  Ameritas had a duty to oversee the dealings that its agent Blake had with Plaintiff,

18  "including auditing and reviewing incoming and outgoing e-mails regarding all matters,"

19  overseeing Blake's management of customers' investments, and ascertaining whether or

20  not Blake was selling unregistered securities by "monitor[ing] his activities, examin[ing]

21  his emails, incoming and outgoing, sent through the ofapeak.us address."  *Id*., ¶¶ 73-75.

22        Ameritas admits that Blake had a fiduciary duty to his customers under the

23  Investment Advisor's Act ("IAA"), but argues that broker-dealers like Ameritas do not.

24  Doc. 24 at 11.  Ameritas argues that it had no discretion or control over Plaintiff's

25  investment accounts or decisions regarding those accounts, and therefore was required to

26  comply only with the federal "suitability standards" promulgated under Conduct Rule

27  2111 of the Financial Industry Regulatory Authority (FINRA), rather than any fiduciary

28  duty to Plaintiff.  *Id*. at 11-12.

1        Ameritas has not shown that the alleged fiduciary duty in this case is legally

2  unfounded.  Ameritas cites *Thomas v. Metro. Like Ins. Co.*, 631 F.3d 1153 (10th Cir.

3  2011), without providing a page citation, but does not address whether the two

4  requirements identified in that case – advice incidental to conduct as a broker and the

5  absence of special compensation – are satisfied here.  Nor does Ameritas address whether

6  the holding of *Thomas* applies in light of Ninth Circuit law.

7        Ameritas also cites *Hoffman v. UBS-AG*, 591 F.Supp.2d 522 (S.D.N.Y. 2008), but

8  that case relies on *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir.1999),

9  which in turn relies on the New York common law of fiduciary duty.  *Id.*  Ameritas does

10  not claim that New York common law applies in this case, nor does he address relevant

11  Ninth Circuit law on the subject.

12        In addition, the complaint alleges a fiduciary duty owed to Plaintiff under the New

13  Mexico Security Act.  Doc. 1 at 19 (citing N.M.S.A. §§ 58-13-B-40(A); 58-13-C-501,

14  502 and 509(B)).  The New Mexico Act makes it unlawful for a person, "in connection

15  with the offer, sale or purchase of a security, directly or indirectly: (A) to employ a

16  device, scheme or artifice to defraud; (B) to make an untrue statement of a material fact

17  or to omit to state a material fact necessary in order to make the statement made, in the

18  light of the circumstances pursuant to which it is made, not misleading; or (C) to engage

19  in an act, practice or course of business that operates or would operate as a fraud or deceit

20  upon another person."  N.M.S.A. § 58-13C-501.  The Act specifically prohibits such

21  conduct by investment advisers (§ 58-13C-502) and imposes liability for the sale of

22  securities "by means of an untrue statement of a material fact or an omission" (§ 58-13C-

23  509(B)).  New Mexico law also imposes joint and several liability on "a person that

24  directly or indirectly controls a person liable" for such conduct.[2]  *Id*. at § 58-13C-

25  509(G)(1).  A controlling person may avoid liability by showing that it "did not know,

26

---

27        [2] In his Complaint, Plaintiff cites to numerous provisions of New Mexico's
Security Act, including §§ 58-13C-501, 502 and 509(B), but does not specifically cite
28  subsection 509(G).  The Court, however, will construe Plaintiff's allegations to include
the applicable section of the Act.

1    and in the exercise of reasonable care could not have known, of the existence of [the]

2    conduct." *Id*. at § 58-13C-509(G)(1).

3            Ameritas argues in a three-sentence footnote that if any state's law applies, it is the

4    law of Nebraska where the Ameritas accounts were based.  Doc. 24 at 9 n. 3.  But

5    Ameritas provides no choice-of-law analysis and fails to address whether it is a

6    controlling person under the New Mexico statute.

7            The Court concludes that Ameritas has not, at this stage of the litigation, shown

8    the absence of a fiduciary duty.  The Court cannot grant the motion to dismiss on this

9    ground.

10           **B.       Breach and Proximate Cause.**

11           Ameritas argues that even if a fiduciary duty existed, Plaintiff has not alleged any

12   actions by Ameritas that constituted a breach of the duty or caused the injury complained

13   of by Plaintiff.  Doc. 24 at 12-15.  Ameritas argues that the only factual averment in the

14   complaint, "even implying that Ameritas breached its fiduciary duties," is Plaintiff's

15   contention that on July 2, 2010, Blake sent Plaintiff an email from his ofapeak.us email

16   address referencing the problems with the development project, and that the email

17   contained a disclosure that the services and securities offered were through Defendant.

18   *Id*. at 13.  Ameritas claims this is insufficient to state a claim for breach of a fiduciary

19   duty.  In response, Plaintiff claims that Defendant's fiduciary duty carried with it a duty

20   to oversee the actions of Blake, and that Ameritas breached this duty because it "was

21   aware or should have been aware that Michael Blake was selling unregistered loan

22   securities under the Ameritas umbrella of trust."  *Id*., ¶¶ 71, 76.

23           Because the July 2, 2010 email was sent almost two years after Plaintiff made the

24   bridge loan investment at issue in this case, Defendant's failure to note the suspicious

25   nature of the email could not have caused the injury alleged by Plaintiff.  The same is true

26   for the four emails that Plaintiff's complaint notes were sent by Blake from a non-

27   Ameritas email account beginning in October 2010.  Doc. 1, ¶ 69.

28           Plaintiff's complaint also asserts, however, that Defendant had a duty to oversee

1    Blake's actions, including ascertaining whether Blake was selling unregistered loan

2    securities. *Id*., ¶¶ 71, 73, 75. And Ameritas itself admits that it had an obligation to

3    "ensur[e] trades *made through the firm* were appropriate based on Plaintiff's investment

4    profile." Doc. 24 at 12 (emphasis in original). The complaint alleges that the bridge loan

5    investment was not suitable and that the failure by Ameritas to oversee Blake's actions

6    was a proximate cause of Plaintiff's injuries. These allegations sufficiently state a claim

7    for breach of fiduciary duty.

8        **IT IS ORDERED** that Defendants motion to dismiss claims against Defendant

9    Ameritas (Doc. 24) is **denied**.

10        Dated this 16th day of May, 2014.

11

12

13

14                               David G. Campbell

15                              United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28